**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELSEY BRIGHTBILL,** | : | **CIVIL ACTION NO. 1:23-CV-2094** |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| **v.** | : | |
| | : | |
| **MID PENN BANK, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

In introducing the Americans with Disabilities Act on the Senate floor on September 7, 1989, Senator Harkin stated "people with disabilities spend a lifetime overcoming not what God wrought but what man imposed by custom and law."135 Cong. Rec. 19800 (1989) (Statement of Sen. Tom Harkin) (citation modified). This case presents an example of the difficulties in navigating the laws and regulations surrounding disabilities in the workplace. Plaintiff Kelsey Brightbill and her former employer, Mid Penn Bank, dispute how Brightbill's requests for accommodations and sick leave should have been handled. While some aspects of the record are clear, others are too uncertain to be determined at this time. Therefore, the court will grant summary judgment in part and deny it in part.

## I. Factual Background & Procedural History[1]

Plaintiff Kelsey Brightbill started working for Defendant Mid Penn Bank ("Mid Penn") as a bank teller in February 2017. (Doc. 23 ¶ 1). Defendants Andrew George and Roberta Hoffman were also employees of Mid Penn working as Brightbill's direct supervisor and the director of human resources, respectively. (Id. ¶ 2). Brightbill continued working as a bank teller until May 2020 where she transitioned to the role of cash management operations representative at Mid Penn.

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the movant's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 23, 25). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

In addition to providing responses to each of Brightbill's statements of fact, her responsive statement includes additional paragraphs listed as "Additional Material Facts" styled as See (Doc. 25 ¶¶ 45-65). Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this filing, and Brightbill did not request permission from the court to file this document. As a result, the "Additional Material Facts" will not receive the evidentiary weight contemplated by Rule 56.1. See Barber v. Subway, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015); see also Rau v. Allstate Fire & Cas. Ins. Co., 793 F. App'x 84, 87 (3d Cir. 2019) (nonprecedential) (citing with approval, *inter alia*, Barber, 131 F. Supp. 3d at 322 n.1, in holding that district courts enjoy wide discretion in interpreting their local rules). Nonetheless, the court has examined the entire Rule 56 record, including Brightbill's counterstatement, in resolving the instant motion.

(Id. ¶ 1). As a cash management operations representative, she assisted with "lock box" service in addition to other duties. (Id. ¶¶ 4-6; Doc. 25 ¶¶ 4-6).[2]

Brightbill began to have significant issues with her job in mid-2022. At some point in July, she requested to work remotely, (Doc. 23-1 at 50:12-14), because she was struggling with bipolar disorder, (Doc. 23-1 at 45:10-46-12). Mid Penn provided her with a laptop for remote work on August 4, 2022, which was also the last day Brightbill performed work for Mid Penn. (Doc. 23-2 at 25:4-26:20).

On August 7, 2022, Brightbill's husband, Harley Brightbill,[3] informed Mid Penn that Brightbill was too ill to return to work due to a manic episode and would require an extended leave of absence for hospitalization. (Docs. 23 ¶ 19; 23-12 at 17:5-24). Mid Penn responded with FMLA paperwork, noting Brightbill would need to have her providers complete and return the documents by August 29, 2022 to permit the leave. (Docs. 23 ¶¶ 20-22; 23-9). Mid Penn further referenced the employee handbook which stated more than three unscheduled absences without notice would result in termination. (Doc. 23 ¶¶ 24-26).

On August 19, 2022, Harley informed Hoffman that he provided Brightbill's medical providers with the required paperwork and that they would send the paperwork by Monday, August 22. (Docs. 23 ¶ 27; 23-12 at 24:7-23). Hoffman followed up with the medical providers on August 25 and 31 because she had yet to receive

---

[2] The parties dispute whether performing the lock box service was a primary role of Brightbill's job as a cash management operations representative. (Doc. 23 ¶ 4; Doc. 25 ¶ 4). Resolving this dispute, however, is immaterial in disposing of this case.

[3] Hereinafter "Harley" because he shares the same last name with the plaintiff Kelsey Brightbill.

Brightbill's medical paperwork. (Docs. 23 ¶¶ 29, 31; 23-3 at 53:20-54:1, 60:12-16). Brightbill states her providers returned the completed paperwork to Mid Penn on August 31, 2022. (Docs. 25 ¶ 32; 23-14 at 27:17-25). Mid Penn claims it never received the documentation. (Docs. 23 ¶ 35; 23-3 at 68:12-17). On September 9, 2022, Mid Penn attempted to follow up with Brightbill directly while she was still hospitalized. (Docs. 23-3 at 64:2-15; 23 ¶ 41).

Mid Penn terminated Brightbill's employment for job abandonment on September 12, 2022. (Doc. 23 ¶ 35). The notice of termination stated Brightbill could appeal her termination by providing evidence of exceptional circumstances that prevented her from providing the required documentation such as medical records. (Doc. 23-16). Harley called Hoffman to inquire about the appeal but was told nothing could be done. (Doc. 23-12 at 32:5-33:4). Brightbill remained hospitalized until September 30, 2022, and alleges she would have been ready to return to work at that time, had she not been terminated. (Doc. 23-1 at 90:3-7).

Brightbill filed her complaint on December 18, 2023. (Doc. 1). Defendants Mid Penn Bank, George and Hoffman motioned for summary judgment. (Doc. 22). The motion has been fully briefed (Docs. 24, 26, 27, 32) and is ripe for disposition.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the

outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to

the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## III. Discussion

Brightbill brings claims under the ADA, PHRA, and FMLA against her employer, Mid Penn Bank, Andrew George, her supervisor, and Roberta Hoffman, the human relations manager. Specifically, Brightbill brings claims of failure to accommodate under the ADA, disability discrimination under the ADA and PHRA, and disability discrimination under the ADA and PHRA. She also brings claims of interference and retaliation under the FMLA. Because the facts are the same as to all defendants, the analysis will not refer to each defendant individually.

### A. Americans with Disabilities Act and Pennsylvania Human Rights Act

#### 1. Failure to Accommodate

Brightbill alleges Mid Penn failed to accommodate her disability when it denied her request to work from home and her request for leave. (Doc. 26 at ECF 7-9). Mid Penn asserts it permitted her to work remotely and would have permitted a leave of absence with the proper paperwork, making summary judgment appropriate.

(Doc. 24 at 6-9, 11-14). In the alternative, Mid Penn argues Brightbill is not a qualified individual under the ADA. (Id. at 9-11).

To establish a failure to accommodate claim, a plaintiff must show: (1) she was disabled, and her employer knew that; (2) she requested an accommodation; (3) her employer did not make a good faith effort to accommodate; and (4) she could have been reasonably accommodated. Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017). A qualified individual is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8), *et seq.*; Bernhard v. Brown & Brown of Lehigh Valley, Inc., 720 F. Supp. 2d 694, 701 (E.D. Pa. 2010).

To determine the appropriateness of an accommodation, parties should engage in an informal, interactive process. 29 C.F.R. § 1630.2(o)(3). The burden to request additional information is on the employer. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 315 (3d Cir. 1999). A brief period of delay in providing an employee with an accommodation is insufficient to show a failure to accommodate. Hudson v. Guardsmark, LLC, No. 4:12-CV-1255, 2013 WL 6150776, at *11 (M.D. Pa. Nov. 22, 2013). However, a party who intentionally obstructs or delays the process is not acting in good faith. Taylor, 184 F.3d at 312. If the record shows the employer made a good faith effort to accommodate the employee, summary judgment is appropriate. Capps, 847 F.3d at 157.

Beginning with whether Brightbill is a qualified individual, Mid Penn does not contest that Brightbill has bipolar disorder, a mental impairment which substantially

limits her ability to concentrate and work. See (Doc. 24 at 10-11) (omitting any challenges to Brightbill's condition or its effect on her work). Rather, the company argues she could not perform her work without an indefinite leave of absence, which is not a reasonable accommodation. (Id. at 9-11). In contrast, Brightbill asserts the leave was temporary and she would have been able to return to work by October. (Doc. 26 at ECF 7-8).

While leave can be a reasonable accommodation, indefinite leave is not. Fogleman v. Greater Hazleton Health All., 122 F. App'x 581, 585-86 (3d Cir. 2004) (nonprecedential). A request for leave is indefinite when "the employee presents no evidence of the expected duration of the requested leave and no indication of a favorable medical prognosis." Wojtowicz v. Gichner Shelter Sys., No. 1:24-CV-962, 2024 WL 5248248, at *4 (M.D. Pa. Dec. 30, 2024) (quoting McCall v. Carbon Schuykill Comty. Hosp., No. 3:19-2052, 2022 WL 359035, at *12 (M.D. Pa. Aug. 23, 2022)). An employee should show she would be able to return to work "in the near future." Fogleman, 122 F. App'x at 585 (citing Conoshenti v. Public Service Electric & Gas. Co, 364 F. 3d 135, 151 (3d Cir. 2004)).

Making all reasonable inferences in favor of Brightbill, it is not clearly established that Brightbill was requesting indefinite leave. While the paperwork completed by Brightbill's medical provider does not include a precise date for her return to work, Debra Farrell, an administrative employee at the hospital, stated she submitted the medical certification forms without an end date upon the representation of Mid Penn that it should be submitted without one. (Docs. 25-4; 23-

13; 23-14 at 67:10-68:21). Additionally, Brightbill's initial request for leave did not include a specific end date, but she informed Mid Penn that the leave was to receive treatment for a manic episode, typically a time-limited event. (Docs. 23 ¶ 19; 25 ¶ 19).

Brightbill further states she would have been able to return to work by early October 2022 when her hospitalization ended. (Doc. 23-1 at 90:3-7). The representation that her leave would be for a short duration and she would have been able to return to work within three months distinguishes this case from the cases cited by Mid Penn in which the plaintiffs affirmatively stated they were not able to return to work at all. See Wong v. RWJ Barnabas Health, No. 23-2844, 2024 WL 4971949, at *4 (3d Cir. Dec. 4, 2024) ("First, Wong states that she cannot return to work indefinitely and therefore cannot perform the essential functions of her job. . . ."); Smart v. Geisinger Health, No. 4:20-CV-02198, 2022 WL 17823682, at *2 (M.D. Pa. Dec. 20, 2022) ) ("Smart's neurologist sent to Geisinger a document indicating that Smart was suffering from a condition that could potentially affect her for life and would require indefinite leave."); Fogleman, 122 F. App'x at 586 ("Furthermore, Fogleman presented no evidence of a favorable diagnosis and she claimed in her application for workers' compensation that she was fully disabled"); but see Wojtowicz, 2024 WL 5248248, at *4 ("While Wojtowicz did not provide a specific date he intended to return, the documentary evidence submitted by Gichner shows that he did intend to return to work and had a favorable medical prognosis."); Equal Emp. Opportunity Comm'n v. Def. Ass'n of Phila., 408 F. Supp. 3d 621, 628 (E.D. Pa. 2019) (Plaintiff's medical provider's uncertainty that she could ever return

to work was not dispositive as "Perez herself alleges that she repeatedly assured the Defender Association that she would be returning to work in January 2018."). Because a reasonable juror could conclude Brightbill's absence was never alleged to be indefinite, and therefore she was a qualified individual, summary judgement will not be granted on this issue.

Turning to the accommodation requests, the discussions between Brightbill and Mid Penn from mid-July through early-August 2022 indicate the parties started to engage in the interactive process regarding the request for remote work. (Docs. 23 ¶¶ 14-18; 25 ¶¶ 14-18). Brightbill argues the company did not accommodate her because George initially did not agree to the request or provide her with a laptop. (Doc. 26 at ECF 7). However, the parties agree Mid Penn furnished Brightbill with a laptop for remote work by August 4, 2022. See (Docs. 23 ¶ 18; 25 ¶ 18). It is immaterial that a different employee than George produced the laptop. A delay of a few weeks to complete the request is not unreasonable and there is no evidence in the record that either party failed to act in good faith. Because no reasonable juror could conclude Mid Penn denied Brightbill's request for remote work, summary judgment is appropriate as to the remote work claim.

Brightbill later requested an additional accommodation, the leave of absence. Again, the record reflects the parties began the interactive process when Brightbill provided notice that she required an accommodation and Mid Penn requested additional documentation. (Docs. 23 ¶¶ 19-23; Docs. 25 ¶¶ 19-23). However, there is a factual dispute as to whether that process broke down due to Brightbill's failure to

return the requested paperwork or Mid Penn's failure to acknowledge receipt of said paperwork. (Docs. 23 ¶ 32; 25 ¶ 32). Given this factual dispute, summary judgment must be denied as to the request for a leave of absence.

**2. Discrimination**

Brightbill further alleges discrimination and retaliation under the ADA and PHRA regarding her termination after requesting disability accommodation. Because the ADA and PHRA[4] claims are interpreted consistently and have the same standard for determining liability, these claims will be analyzed together. Oden v. SEPTA, 671 F. App'x 859, 862, n.4 (3d Cir. 2016) (citing Macfarlan v. Ivy Hill SNF, LLC., 675 F.3d 266, 274 (3d Cir. 2012)). Summary judgment in disability discrimination cases follows the burden-shifting framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff has the initial burden to establish her prima facie case. The burden then shifts to the defendant to assert a legitimate reason for the decision. Walton v. Mental Health Ass'n. of Se. Pennsylvania, 168 F.3d 661, 667-68 (3d Cir. 1999).

[4] Before filing a claim under the Pennsylvania Human Relations Act (PHRA), a plaintiff must first file with the Pennsylvania Human Relations Commission (PHRC) or cross file with the Equal Employment Opportunities Commission (EEOC). Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 919-21 (PA, 1989); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). While there is no dispute that Brightbill cross filed a complaint and received a notice of right to sue from the EEOC, the status of her request regarding the PHRA is unclear. (Doc 1 ¶ 13). However, as the parties have not made arguments on this issue and Brightbill asserts she intended to file with the PHRC, the court will consider her filings proper. See Zysk v. FFE Mins. USA Inc., 225 F. Supp. 2d 482, 494 n.7 (E.D. Pa. 2001).

To establish a prima facie case of employment discrimination, a plaintiff must show she (1) had a disability, (2) is a qualified individual, and (3) suffered an adverse employment action due to that disability. Taylor, 184 F.3d 296, 306 (3d Cir. 1999) (citing Gaul v. Lucent Technologies, 134 F 3d. 576, 580 (3d Cir. 1998)). Brightbill's alleged adverse employment action is her termination. As explained above, there is a factual dispute as to whether she was terminated due to her disability. Specifically, the record is unclear as to whether Brightbill was terminated for being absent from work without notice or if Mid Penn terminated her employment soon after she made a proper request for leave. (Docs. 23 ¶ 32; 25 ¶ 32). As such, the record does not support summary judgment on the issue of disability discrimination.

**3. Retaliation**

The ADA makes it unlawful for employers to discriminate against an employee because she made a charge under the act. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Retaliation cases can be brought under a pretext or mixed motives theory. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). Brightbill alleges a pretext theory. Thus, to succeed, she must first establish her prima facie case before the burden shifts to her employer to advance a legitimate, non-retaliatory explanation for the employment action. Krouse, 126 F.3d at 500. Following the burden shifting framework, Brightbill can then argue the defendant's stated reason is pretextual. Id.

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in a protected activity, (2) adverse action by the employer, and (3) a causal

connection between the protected activity and adverse action. Krouse, 126 F.3d at 500 (citing Woodson v. Scott Paper Co.,109 F.3d 913, 920 (3d Cir. 1997)). An employee engages in a protected activity when she opposes any act or practice made unlawful by the ADA or participates in an investigation, hearing, or proceeding under that law. Emmell v. Phoenixville Hosp. Co., LLC, 303 F. Supp. 3d 314, 331 (E.D. Pa. 2018) (citing E.E.O.C. v. Allstate Ins. Co., 778 F.3d 444, 452 (3d Cir. 2015), as amended on reh'g in part (Mar. 26, 2015)). Additionally, the Third Circuit has held requesting an accommodation is a protected activity under the ADA. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 190-91 (3d Cir. 2003).

Again, the record is too unclear for summary judgement. First, the parties disagree on whether Brightbill established her prima facie case. Mid Penn asserts Brightbill never returned the required paperwork, meaning she never made a complete request for an accommodation. (Doc. 23 ¶¶ 32-35). However, Brightbill states she returned the required paperwork to certify her leave, making her request proper and complete. (Docs. 25 ¶¶ 32-35). Because there is a dispute of material fact as to whether Brightbill made a complete request for accommodation and thus whether she engaged in a protected activity, summary judgement is denied as to the request for leave.

Even presuming Brightbill made out her prima facie case, there is still a factual dispute that precludes summary judgement. Mid Penn avers it terminated Brightbill's employment for job abandonment after she failed to provide proper notice of her absence per company policy. (Doc. 23 ¶¶ 32-35). This satisfies its burden of

showing a non-discriminatory reason for her termination. However, Brightbill disputes this explanation for her termination as pretextual, arguing she returned the required paperwork to certify her leave and Mid Penn is lying about never receiving the paperwork. (Docs. 25 ¶¶ 32-35). Again, the clear factual dispute regarding the certification paperwork precludes summary judgement on this issue.

**B. FMLA**

The FMLA guarantees up to 12 weeks of leave during a 12-month period to accommodate an employee's serious health condition that makes her temporarily unable to work. 29 CFR § 825.200. Under the FMLA, an employee may claim: (1) her employer interfered with her entitlement to take leave ("the interference provision"), or (2) her employer discriminated against her after exercising her FMLA rights, ("the retaliation provision"). Dreibelbis v. Cnty. of Berks, 438 F. Supp. 3d 304, 320 (E.D. Pa. 2020) (citing Callison v. City of Phila., 430 F. 3d 117, 119 (3d Cir. 2005).

Brightbill alleges claims of both FMLA interference and retaliation against Mid Penn in connection with her request for leave in August 2022. These FMLA claims follow the same burden-shifting framework as the ADA claims discussed above. Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012).

**1. Interference**

It is unlawful for an employer to interfere with or deny an employee's rights under FMLA. To assert a claim of interference, a plaintiff must show (1) she was entitled to benefits under the FMLA and (2) her employer illegitimately prevented her from obtaining those benefits. Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d

398, 401 (3d Cir. 2007). Mid Penn argues summary judgement is warranted because Brightbill was never entitled to FMLA leave as she failed to submit proper paperwork to complete her notice. (Doc. 24 at 14-16). However, Brightbill asserts she did provide the required paperwork and thus gave proper notice. (Doc. 26 at ECF 13-14).

An employee is required to notify her employer that she intends to take FMLA leave and the qualifying reason for the leave, but this notice does not need to use precise language or have a specific end date. Sarnowski, 510 F.3d at 402. If the employer is uncertain about whether the leave qualifies, it is the employer's responsibility to ask further questions of the employee. Lichtenstein, 691 F.3d at 303. Those questions may include requests for medical certification. Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149, 153 (3d Cir. 2015) (citing 29 U.S.C § 2613(a)). If the certification is not returned, returned but incomplete, or otherwise insufficient, an employer may deny the leave request. Id.; 29 C.F.R. § 825.305(c). However, it may only do so when the employee has been provided with the opportunity to cure the deficiency. Hansler, 798 F.3d at 153 (citing 29 C.F.R § 825.305(c)).

Mid Penn asserts it requested Brightbill to complete certification forms, but it never received completed documents from her or her representatives. (Docs. 23 ¶¶ 20, 33-34; 23-15). In contrast, Brightbill alleges her medical provider delivered the completed forms to Mid Penn on August 31, 2022. (Docs. 25 ¶ 39; 25-3). Interpreting an employee's notice is a question of fact. Lichtenstein, 691 F.3d at 303-04. As there is a clear factual dispute in the record as to whether Brightbill met her notice

requirements, Mid Penn is not entitled to summary judgment on the FMLA interference claim. (Doc. 24 at 14-16).

**2. Retaliation**

To prevail on an FMLA retaliation claim, a plaintiff must show (1) she invoked her right to qualifying leave, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to her invocation of her FMLA rights. Lichtenstein, 691 F.3d at 302 (citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09) (3d Cir. 2009)). Mid Penn argues that summary judgment is warranted because Brightbill never provided the certification forms required by the FMLA.

As explained above, there is a genuine factual dispute supported by the record as to whether Brightbill properly invoked her right to FMLA leave. Because this factual dispute must be determined by a jury, summary judgment is denied as to plaintiff's FMLA retaliation claim.

## IV. **Conclusion**

While the processes surrounding receiving benefits under the ADA, PHRA, and FMLA can be convoluted and bureaucratic, it is important for parties to do their best to follow that process. The parties agree the process broke down, but disagree over when that rupture occurred and who was responsible. Summary judgment is therefore denied as to Brightbill's failure to accommodate claim as to her request for leave under the ADA and PHRA and her FMLA claims. Summary judgement is granted as to her ADA and PHRA claim for remote work accommodations. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated: September 24, 2026